## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CENTURY 21 REAL ESTATE, LLC,

                Plaintiff,

vs.

MARSHCO VENTURES, LLC and
BRAD VENEKLASE,

                Defendants.

_____/

USDC Case No. __**1:07CV0506**__

Hon. __**Robert Holmes Bell**__
      **Chief, U.S. District Judge**

Jason P. Klingensmith (P61687)
Dickinson Wright PLLC
Attorneys for Plaintiff
500 Woodward Ave., Suite 5000
Detroit, Michigan 48226-3425
(313) 223-3500

Daniel M. Eliades
Forman Holt Eliades & Ravin, LLC
Co-Counsel for Plaintiff
218 Route 17 North
Rochelle Park, New Jersey 07662
(201) 845-1000

_____/

## COMPLAINT

Plaintiff Century 21 Real Estate, LLC hereby makes and files this complaint (the "Complaint") against Defendants Marshco Ventures, LLC and Brad Veneklase (collectively, the "Defendants").

## I.   PARTIES AND SUBJECT MATTER JURISDICTION

1.      Plaintiff Century 21 Real Estate, LLC, f/k/a Century 21 Real Estate Corporation (collectively, "Century 21"), is a corporation organized and existing under the laws of the State of Delaware, and having a principal place of business at 1 Campus Drive, Parsippany, New Jersey.

2.      Upon information and belief, Defendant Marshco Ventures, LLC ("Marshco") is a Michigan limited liability company which is registered with and exists under the laws of the State of Michigan, with business offices located at 4283 Lake Michigan Drive NW, Suite A, Grand Rapids, Michigan, and its registered office for service located at the same address.

3.      Upon information and belief, Marshco is doing and/or has done business as "The Platinum Realty Group Partners" at the same address provided in the immediately preceding paragraph.

4.      Upon information and belief, no member or partner of Marshco is a resident of New Jersey or Delaware.

5.      Defendant Brad Veneklase ("Veneklase") is a Michigan resident who is the registered agent for service on Marshco, and who also has a business address of 4283 Lake Michigan Drive NW, Suite A, Grand Rapids, Michigan.

6.      Upon information and belief, Veneklase is the owner and managing member of Marshco.

7.      This Court has subject matter jurisdiction over this action because complete diversity exists between the parties under 28 U.S.C. § 1332(a) and the amount in controversy exceeds $75,000.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because, based on information and belief, all of the defendants reside in the State of Michigan and in this judicial district.  Moreover, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## II.     ALLEGATIONS COMMON TO ALL CLAIMS

### A.      The Licensor.

9.      Century 21 has the exclusive right to use and sublicense certain trade names, trademarks and service marks, including the name "CENTURY 21", which have been registered on the Principal Register in the United States Patent and Trademark Office, with other appropriate state agencies in the United States, and with governmental agencies of foreign countries.

10.     Century 21 has developed a system for the promotion and assistance of independently owned and operated real estate brokerage offices, including policies, procedures and techniques designed to enable such offices to compete more effectively in the real estate sales market (which system is hereinafter called the "CENTURY 21 System").

11.     From time to time, Century 21 enters into franchise agreements with persons or entities interested in using the CENTURY 21 System and certain CENTURY 21 Marks.

### B.      The Franchise Agreements Between Century 21 and Pearson.

12.     Pearson-Cook Company, Inc. ("Pearson") independently owned and operated eight (8) real estate brokerage offices throughout Michigan as a franchisee of Century 21 pursuant to eight (8) Century 21 Real Estate Franchise Agreements (collectively, the "Franchise Agreements") as are more particularly described below.

3

13. Four (4) of the eight (8) Franchise Agreements by and between Century 21 and Pearson were executed by the parties on or about October 1, 1996, with respect to Pearson's offices located at four (4) separate locations in Grand Rapids, MI.

14. On or about February 14, 1997, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 580 N. Beacon Blvd., Suite 21, Grand Haven, MI.

15. On or about February 28, 1997, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 735 S. Garfield Avenue, Traverse City, MI.

16. On or about July 1, 1999, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 325 N. St. Joseph Street, Suttons Bay, MI.

17. On or about January 1, 2001, Pearson entered into a Franchise Agreement with Century 21 for the operation of a Century 21 Real Estate brokerage office located at 3878 M-72, Acme, MI, which location was later changed to 215 South Cedar, Kalkaska, MI.

18. In approximately July 2002, there was an ownership change of Pearson, resulting in Timothy Robert Fore and Patti Jo Fore (the "Fores"), who are the parents of Defendant Veneklase, each owning fifty percent (50%) of Pearson.

19. In approximately July 2002, the original owners of Pearson assigned the Franchise Agreements to the Fores pursuant to eight (8) Assignment, Assumption and Release Agreements.

**C. The Royalty Fees Due Under the Franchise Agreements.**

20. Pursuant to the Franchise Agreements, Pearson agreed to pay Century 21 certain franchise royalty fees equal to six percent (6%) of the gross revenue earned, derived and/or received from certain transactions by Pearson and its affiliates (the "Royalty Fees").

4

21.     Pursuant to the provisions of the Franchise Agreements, the Royalty Fees are fully earned by and payable to Century 21 immediately upon Pearson's receipt of revenue, whether in cash or other property, and are to be paid promptly.

22.     Each Franchise Agreement provides that Royalty Fees more than ten (10) days late bear interest from the due date until paid, at the lower rate of either the highest rate allowed by law or a rate that is five (5) percentage points per annum higher than the "prime rate" then currently established by Mellon Bank, N.A., Pittsburgh, Pennsylvania.

23.     Pearson has failed to pay Royalty Fees that have come due under the terms of each of the Franchise Agreements.

24.     The Franchise Agreements provide that should either party incur attorneys fees in order to enforce the terms and conditions thereof, including post-term covenants, whether or not a legal action is instituted, the party not in default shall be entitled to reimbursement of such attorneys' fees and costs, in addition to any other remedies either party may have at law or in equity. The Franchise Agreements further provide that should any legal action be instituted in connection with the Franchise Agreements, the prevailing party shall be entitled to recover all costs and expenses, including attorneys fees.

**D.     National Advertising Fund Contributions Due Under the Franchise Agreements.**

25.     The Franchise Agreements also provide that, in addition to the Royalty Fees, Pearson will pay timely to Century 21 a National Advertising Fund ("NAF") contribution equal to two percent (2%) of the gross revenue earned, derived and/or received from specified transactions by Pearson and its affiliates (the "NAF Contributions").

26.     Century 21 billed Pearson-Cook for the NAF Contributions on or about the tenth (10th) day of the month following the month in which Royalty Fees were payable to Century 21

under the Franchise Agreements. If the NAF Contributions were not received by the last day of the appropriate month, Century 21 was entitled to assess a late fee equal to ten percent (10%) of the delinquent amount payable to Century 21 and/or accrue interest on the amount past due from the date due to the date paid at the lower rate of either the highest rate allowed by law of a rate that is five (5) percentage points per annum higher than the "prime rate" then currently established by Mellon Bank, N.A., Pittsburgh, Pennsylvania.

27.     Pearson failed to pay NAF Contributions that came due pursuant to the Franchise Agreements.

**E.      Other Amounts Due Under the Franchise Agreements.**

28.     The Franchise Agreements provide for payment of lost future profits to Century 21 should any of the agreements terminate prematurely for certain reasons stated in the Franchise Agreements.

29.     The Franchise Agreements provide that should either party incur attorneys fees in order to enforce the terms and conditions thereof, including post-term covenants, whether or not a legal action is instituted, the party not in default shall be entitled to reimbursement of such attorneys fees and costs, in addition to any other remedies either party may have at law or in equity. The Franchise Agreements further provide that should any legal action be instituted in connection with the Franchise Agreements, the prevailing party shall be entitled to recover all costs and expenses, including attorneys fees.

**F.      The Guaranty.**

30.     In connection with the Franchise Agreements, the Fores each executed a Guaranty of Payment and Performance (the "Guaranty") whereby they personally guaranteed to Century 21 all obligations of Pearson under the Franchise Agreements and all other agreements between Pearson and Century 21.

6

31. Pursuant to the terms of the Guaranty, each of the Fores agreed, among other things, to, "the prompt payment and performance when due of all obligations of [Pearson] under" the Franchise Agreements, and every other agreement between Pearson and Century 21. The obligations of Pearson guaranteed by the Fores include, but are not limited to, the obligation to pay Century 21 all Royalty Fees, NAF Contributions, amounts due on promissory notes, and attorneys fees and costs incurred by Century 21 in enforcing the agreements between Pearson and Century 21.

32. The Guaranty provides that the obligations of the Fores are absolute and unconditional obligations, and constitute a guaranty of payment and performance.

33. The Fores have failed to honor the terms of the Guaranty by, *inter alia*, failing or refusing to make payments to Century 21 or otherwise "cure" as required by the terms of the Guaranty.

**G.     The Promissory Notes from Pearson and the Fores to Century 21.**

34. From time to time, Century 21 loaned money to Pearson and the Fores for, *inter alia*, expenses related to the development and expansion of new branch offices. These loans are evidence by nine (9) promissory notes executed by Pearson and the Fores, as co-makers (the "Promissory Notes"), as is more fully alleged below.

35. On or about August 15, 1996, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay Century 21 the principal amount of $100,000 ("Promissory Note One"). Pursuant to the terms of Promissory Note One, $10,000 of the principal amount was to be forgiven each year on October 1, from October 1, 1997 through October 1, 2006 (*i.e.* for ten (10) years), provided that Pearson and the Fores were not in default of the terms of any of the Franchise Agreements.

36. On or about August 21, 1996, Pearson and the Fores executed an Expansion Promissory Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to

7

pay Century 21 the principal amount of $70,000 ("Promissory Note Two"). Pursuant to the terms of Promissory Note Two, the principal and interest would be reduced annually on a dollar for dollar basis by the full amount, if any, earned by Pearson under the Century 21 Incentive Bonus Plan (as is more fully described in the Franchise Agreement). Any principal and interest not paid or credited pursuant to these terms and outstanding as of October 1, 2001 was to be paid on October 1, 2001.

37.     On or about August 23, 1996, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay to Century 21 the principal amount of $60,000 ("Promissory Note Three"). Pursuant to the terms of Promissory Note Three, $6,000 of the principal amount was to be forgiven each year on October 1, from October 1, 1997 through October 1, 2006 (*i.e.* for ten (10) years) provided that Pearson and the Fores were not in default of the terms of any of the Franchise Agreements.

38.     On or about October 6, 1998, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay Century 21 the principal amount of $32,500 ("Promissory Note Four"). Pursuant to the terms of Promissory Note Four, $3,250 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Four were met, including the condition that Pearson and the Fores were not in default of the terms of any Franchise Agreement.

39.     On or about September 1, 1999, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay Century 21 the principal amount of $49,000 ("Promissory Note Five"). Pursuant to the terms of Promissory Note Five, $4,900 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Five were met, including the condition that Pearson and the Fores not be in default of the terms of any of the Franchise Agreements.

8

40.     On or about May 16, 2000, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay Century 21 the principal amount of $43,350 ("Promissory Note Six"). Pursuant to the terms of Promissory Note Six, $4,805.55 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Six were met, including the condition that Pearson and the Fores not be in default of the terms of any of the Franchise Agreements.

41.     On or about December 20, 2000, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay Century 21 the principal amount of $70,000 ("Promissory Note Seven"). Pursuant to the terms of Promissory Note Seven, $7,777.77 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Seven were met, including the condition that Pearson and the Fores not be in default of the terms of any of the Franchise Agreements.

42.     On or about January 9, 2001, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay Century 21 the principal amount of $140,000 ("Promissory Note Eight"). Pursuant to the terms of Promissory Note Five, $15,555.55 of the principal amount was to be forgiven annually provided that certain conditions of Promissory Note Eight were met, including the condition that Pearson and the Fores not be in default of the terms of any of the Franchise Agreements.

43.     On or about July 31, 2002, Pearson and the Fores executed a Development Advance Note, as co-makers, wherein Pearson and the Fores jointly and severally promised to pay Century 21 the principal amount of $239,567.42 together with accrued interest thereon at the rate of 6.75% per annum ("Promissory Note Nine"). Pursuant to the terms of Promissory Note Nine, principal and interest were to be paid in 25 monthly installments as follows:    (a) 24 equal monthly

9

installments of $4,000 payable on the 1st of each month, commencing September 1, 2002, and (b) a balloon payment on September 1, 2004 of all amounts then due on Promissory Note Nine.

44. Each of the Promissory Notes provides, *inter alia*, that if Pearson or the Fores is in default of any material term of any Franchise Agreement or any other promissory note or debt instrument, then, upon such default, Century 21 may accelerate the unpaid principal and all interest accrued thereon as to all obligations, with same to become immediately due and payable, without presentment for payment or any notice or demand.

45. The Promissory Notes each provide that if the Promissory Notes are collected by or through an attorney-at-law or another third party, Century 21 shall be entitled to collect reasonable attorneys fees and all costs of collection from Pearson an/or each of the Fores.

46. Pearson is in default of certain material terms of the Franchise Agreements because, *inter alia*, Pearson has failed to make payments for Royalty Fees and NAF Contributions.

47. Pearson and each of the Fores are in default of certain material terms of the Promissory Notes because, *inter alia*, Pearson and each of the Fores have failed to make certain installment payments.

48. Century 21 accelerated the amount due under each of the Promissory Notes.

**H. The Security Agreements.**

49. From time to time, Pearson entered into certain security agreements with Century 21 (the "Security Agreements"), to secure its obligations to Century 21 arising pursuant to the Franchise Agreements and the Promissory Notes.

50. Pearson entered into five (5) separate Security Agreements with Century 21 as security for all agreements between Pearson and Century 21, including but not limited to, the Promissory Notes and the Franchise Agreements.

51.     The Security Agreements grant to Century 21 a security interest in certain collateral at specified locations, with such collateral identified as follows:

> all of the furniture, furnishings, equipment, real estate listings and listing agreements and related rights which are located at or related to the residential real estate brokerage business conducted by [Pearson] and including the proceeds and products therefrom and any and all substitutions, replacements, additions, and accessions thereto and to CENTURY 21 Incentive Bonuses to which [Pearson] may be entitled pursuant to any franchise agreement entered into with [Century 21], together with all such rights and properly hereafter acquired by [Pearson].

The collateral identified above will be collectively referred to as the "Collateral."

52.     Century 21 perfected its security interests granted pursuant to the Security Agreements by timely filing UCC-1 financing statements.

53.     The Security Agreements provide that, *inter alia*, the following events constitute "default":

> (a)     the failure by Pearson to pay any amount when due under the terms and provisions of the corresponding Promissory Note; or
>
> (b)     Pearson's breach of any term, provision, warranty or representation set forth in the Security Agreement or in the respective Franchise Agreement, or in any other agreement between Pearson and Century 21.

54.     The Security Agreements provide that in the event of a default, Century 21 may, *inter alia*, declare all obligations immediately due and payable, and enforce its security interest.

55.     The Security Agreements provide that in the event either party commences litigation against the other with respect to the Security Agreements, or their interpretation or enforcement, the prevailing party shall be entitled to reasonable attorney's fees and costs.

56.     Pearson is in default of its obligations under the terms of the Promissory Notes and the Franchise Agreements.

57.     Under the terms of the Security Agreements, upon such default, Century 21 became, and is, entitled to immediate possession of the Collateral.

58.     By letter dated March 11, 2003, Century 21 notified the Fores and Pearson that: (a) Pearson was substantially in arrears in payments due in connection with the Royalty Fees and NAF Contributions; and (b) Pearson and the Fores were substantially in arrears in installments due under the various Promissory Notes.  Century 21 notified the Fores and Pearson that the on-going failure to report and transmit payment constitutes a breach of the applicable Franchise Agreements. Century 21 made demand for payment of outstanding balances.

59.     Pearson and the Fores failed or refused to make payment as demanded by Century 21.

60.     Pearson has breached and is in default of obligations due and owing to Century 21 under the terms and conditions of the Franchise Agreements and Promissory Notes because, *inter alia*, Pearson has failed to pay amounts due to Century 21.

61.     60.     The Fores have breached and are in default of obligations due and owing to Century 21 under the terms and conditions of the Promissory Notes because, *inter alia*, the Fores have failed to pay amounts due to Century 21.

        **I.     The District Court Litigation.**

62.     On July 3, 2003, Century 21 filed a lawsuit against the Fores and Pearson in the United States District Court for the Western District of Michigan, Case No. 03 CV 0091, seeking damages as a result of those defendants' breach of the parties' agreements, (the "District Court Litigation").

63.     On June 4, 2004, Century 21, Pearson and Debtors entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement") in an effort to resolve the District Court Litigation.[1] In addition:

    (a)     Pearson and Debtors executed an Expansion Promissory Note in the amount of $572,256.58, pursuant to which the defendants became obligated to pay Century 21 $572,256.58 (the "Initial Settlement Note");

    (b)     Century 21, Pearson and Debtors executed a Consent Judgment (the "Initial Consent Judgment") in the amount of $572,256.58 to be entered in the event defendants defaulted under the Initial Settlement Note;

    (c)     Pearson and Debtors executed a Security Agreement providing Century 21 with a security interest in all of Pearson's, "furniture, furnishings, equipment, real estate listings and listing agreements and related rights which are located at or related to the residential real estate brokerage business conducted by [Pearson] and including the proceeds and products therefrom."

    (d)     Century 21, Pearson and the Debtors executed and had entered by the District Court a Stipulated Order of Dismissal With Prejudice which was subject to all of the terms and conditions of the Settlement Agreement and pursuant to which the District Court would retain jurisdiction over this case for the purpose of enforcing all of the terms and provisions of the Settlement Agreement.

64.     In connection with the Settlement Agreement, the Fores and Pearson entered into eight (8) new franchise agreements with Century 21, which were effective as of January 1, 2004.

65.     These Franchise Agreements contain, *inter alia*, covenants not to compete which prohibit the Fores from, during the term of the Franchise Agreements, "engag[ing] in any real estate brokerage business or related business without our advance written consent."

---

[1] The Settlement Agreement contains a confidentiality provision precluding disclosure of its terms and requiring that it be filed under seal. Accordingly, Century 21 has not attached a copy of same. However, Century 21 will produce a copy of the Settlement Agreement for the Court's in *camera* review upon the Court's request.

66.     On July 21, 2004, Century 21 advised the District Court that the defendants therein had defaulted under the terms of the Settlement Agreement and Initial Settlement Note. Accordingly, on July 22, 2004 the Court entered the Initial Consent Judgment in favor of Century 21 and against Pearson and the Fores, jointly and severally, in the amount of $572,256.58.

67.     In order to induce Century 21 to refrain from executing on the Initial Consent Judgment and terminating Pearson as a Century 21 franchisee, Pearson and the Fores offered to engage in continued negotiations directed at paying off the Initial Consent Judgment.

68.     Ultimately, on September 20, 2004, the parties reached an agreement and memorialized such agreement in a Second Addendum to Settlement Agreement and Mutual Release (the "Second Addendum").[2]  In addition:

> (a)     Century 21, Pearson and the Fores executed an Amended Expansion Promissory Note ("Amended Settlement Note") in the amount of $544,487.00, pursuant to which those defendants became obligated to pay Century 21 $544,487.00; and
>
> (b)     Century 21, Pearson and the Fores executed an Amended Consent Judgment in the amount of $544,487.00 to be entered by the Court in the event those defendants defaulted under the Amended Settlement Note.

69.     Pearson and the Fores, however, failed to make a single payment under the Amended Settlement Note and thus defaulted under the terms of the Second Addendum and Amended Settlement Note.

70.     On December 21, 2005, Century 21 advised the District Court of these defaults. Accordingly, on December 29, 2005, the Court entered the Amended Consent Judgment in favor of Century 21, and against Pearson and the Fores, jointly and severally, in the amount of $544,487.00.

---

[2] The Second Addendum is governed by the Settlement Agreement's confidentiality provision. Century 21 will produce same for in *camera* review by the Court, upon the Court's request.

71.     On January 11, 2006, the District Court entered an Order allowing defendants' counsel to withdraw from representing defendants in the District Court Litigation.

**J.      Debtors Induce Century 21 to Refrain From Fully Executing On The Amended Consent Judgment And Terminating Pearson As A Century 21 Franchisee.**

72.     As a result of defendants' default and the entry of the Amended Consent Judgment, Century 21 initialed collection efforts against Pearson and the Fores in June 2006, including the service of writs of garnishment and execution. In July 2006, Century 21 successfully garnished $4,173.80 from bank accounts owned by the Fores.

73.     In response, the Fores again requested that Century 21 refrain from collecting the Amended Consent Judgment. This time, the Fores advised Century 21 that they had obtained an investor who would provide a cash infusion to Pearson and the Fores sufficient to satisfy the Amended Consent Judgment. On the basis of this representation, Century 21 agreed to refrain from terminating Pearson as a Century 21 franchisee, and to refrain from collecting on the Amended Consent Judgment.

74.     Ultimately, Century 21 provided Pearson and the Fores with an extension of time, through and including October 31, 2006, to provide Century 21 with a firm plan to satisfy the Amended Consent Judgment. Despite repeated assurances that the firm proposal would be forthcoming, Pearson and the Fores failed to provide Century 21 with any such proposal.

75.     The Fores' representations of the existence of an investor who would provide a cash infusion sufficient to satisfy the Amended Consent Judgment were: (a) knowingly false or material misrepresentations; (b) made with the intent for Century 21 to rely thereon; (c) Century 21 justifiably relied upon same; and (d) Century 21 was injured as a result of such reliance.

**K.**     **The Cessation of Operations By Pearson And The Transfer of Century 21's Collateral.**

76.     Rather than providing Century 21 with the promised plan to satisfy the Amended Consent Judgment by October 31, 2006, the Fores were planning to close Pearson without maximizing the value of its assets or providing any benefit to Century 21 or Pearson's other creditors. Moreover, while the Fores were planning to abandon Pearson, they were making plans to transfer Pearson's assets, including Century 21's Collateral, to Defendants herein without the permission of Pearson's secured creditors and without providing any benefit to Pearson's secured creditors. In fact, the Fores stated themselves that they were negotiating to "partner with" the main transferee – Defendants Marshco and Veneklase.

77.     On November 1, 2006, the Fores sent a memorandum to all of Pearson's Grand Rapids sales associates (the "Memorandum"). The Memorandum states that Pearson's Traverse City and Suttons Bay offices would remain open under the ownership of a third party (who was not a Century 21 licensee).

78.     The Memorandum announced that the Grand Rapids and the Grand Haven offices of Pearson would close in two days – effective November 3, 2006.

79.     The Memorandum advised that the Fores were "… excited about the new direction we are taking and the company we have chosen to partner with." The "partner" referenced in the Memorandum is the Platinum Realty Group ("Platinum").

80.     Upon information and belief, Platinum is a real estate brokerage firm which owns and licenses real estate sales offices in Michigan.

81.     Upon information and belief, Defendant Marshco is a franchisee of Platinum, and has registered an assumed "doing business as" name of "The Platinum Realty Group Partners"

with the State of Michigan Department of Labor and Growth. Defendant Veneklase is identified on such registration as the registered agent for "The Platinum Realty Group Partners".

82.  The Memorandum goes on to advise that the Fores, "... have aligned ourselves with a well respected company in Grand Rapids." Again, this references Platinum.

83.  In the Memorandum, the Fores go on to state that: "[w]e will be offering the most competitive associate package available while still providing the benefits of a full service real estate company."

84.  In the Memorandum, and by other means, the Fores solicited Pearson's agents to join Platinum, by joining its franchisee, Defendants Marshco and Veneklase.

85.  In the Memorandum the Fores advised their agents of a meeting at the Crowne Plaza Hotel on November 2, 2006, "... to learn more about this new career opportunity ...."

86.  The Fores attended the scheduled meeting at the Crowne Plaza Hotel.

87.  The purpose of the meeting was to solicit Pearson agents to join Platinum, by joining Defendant Marshco.

88.  Approximately 50 agents of Pearson attended the meeting.

89.  Timothy R. Fore and one of the principals of Platinum spoke at the meeting.

90.  On or about November 2, 2006, the Fores caused Pearson to expire all of its current listings so that they could be transferred to new brokers.

91.  On or about November 2, 2006, all of Pearson's then-current listings were transferred to new brokers.

92.  On or about November 2, 2006, many of Pearson's then-current listings were transferred to Defendant Marshco.

93.     On or about November 2, 2006, many of Pearson's agents transferred their real estate licenses to Defendant Marshco.

94.     On or after November 2, 2006, certain of Pearson's furniture, fixtures, equipment and/or leases were transferred to Defendant Marshco, or were abandoned by Pearson.

95.     Upon information and belief, Pearson received no consideration for the transfer or surrender of its listing agreements, sales agents, furniture, fixtures, equipment and/or leases.

96.     The sudden demise of Pearson and affiliation with Platinum was the subject of two news paper articles in Grand Rapids, both of with contain statements attributed to Timothy R. Fore.

**L.     The Termination of the Franchise Agreements and Appointment of a Receiver.**

97.     By letter of November 8, 2006, Century 21 terminated the subject Franchise Agreements with the Debtors effective November 9, 2006.

98.     On November 9, 2006, Century 21 filed a motion in the District Court Litigation for a temporary restraining order, preliminary injunction and appointment of a receiver for Pearson. On November 9, 2006, the District Court entered a temporary restraining order which, among other things, prohibited the Debtors and Pearson from transferring any assets.

99.     On November 13, 2006, the District Court entered an order granting Century 21's permanent injunction, appointing a receiver for Pearson and requiring the Fores to provide various discovery.  The very next day, on November 14, 2006, the Fores filed a voluntary chapter 7 bankruptcy proceeding with this Court and also filed a Chapter 7 case for Pearson.

100.    In addition to the amount due on the Amended Consent Judgment of $544,487, plus interest accruing on same (in the amount of $83,746.57 as of their bankruptcy petition date), the Fores and Pearson were indebted to Century 21 in the amount of $718,929.88 on account of outstanding royalty fees due under the Franchise Agreements.

18

101. In addition, as a result of the termination of the Franchise Agreements, the Fores and Pearson became obligated to pay Century 21 for liquidated damages in the amount of $5,230,489.05 under the Franchise Agreements.

102. Accordingly, the Fores were, at the time of the filing of the petition initiating their bankruptcy proceeding, indebted to Century 21 in at least the amount of $6,605,699.36, plus continually accruing interest.

**M.    Marshco.**

103. Defendant Marshco is a Michigan Limited Liability Company, which does business as The Platinum Realty Group Partners.

104. Defendant Marshco is owned by the Debtors' son, Defendant Veneklase.

105. Marshco is in the same business as Pearson was – real estate brokerage.

106. Marshco occupies office space at two locations, both of which were formerly occupied by Pearson, one at 1550 East Beltline, Grand Rapids, Michigan, and one at 4283 Lake Michigan Drive NW, Grand Rapids, Michigan.

107. Upon information and belief, Marshco has formally or informally assumed Pearson's leases and other obligations related to these two former Pearson locations.

108. All of Marshco's sales agents were formerly employed by Pearson.

109. Many of Marshco's listing agreements were formerly Pearson's listing agreements.

110. Marshco has utilized furniture, fixtures and/or equipment formerly belonging to Pearson.

111. Upon information and belief, Marshco paid no consideration whatsoever for the transfer of assets, equipment, listing agreements, and goodwill from Pearson and the Fores to Marshco.

19

112.    The Fores have transferred their real estate licenses to Marshco.

113.    Marshco currently employs Patti Fore at the 4283 Lake Michigan Drive NW, Suite A, Grand Rapids, Michigan location.

114.    Upon information and belief, Marshco currently employs Timothy Fore at the 4283 Lake Michigan Drive NW, Suite A, Grand Rapids, Michigan location.

### FIRST COUNT – *DE FACTO* MERGER

115.    Century 21 repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of this Complaint.

116.    Marshco and/or Veneklase received assets of Pearson, including but not limited to Century 21's Collateral, Pearson's goodwill and its value as a going concern.

117.    Marshco and/or Veneklase paid no consideration for the transfer of assets from Pearson to Marshco.

118.    A close "insider" relationship exists between Marshco, Veneklase, Pearson and the Fores, as a result of the parent-child relationship between Veneklase and the Fores, Marshco being owned and operated by Veneklase (the Fores' son), and Pearson being owned and operated by the Fores (Veneklase's parents).

119.    Marshco and/or Veneklase continued the Pearson enterprise by, among other things:

> (a)    Utilizing the same personnel and management utilized by Pearson;
>
> (b)    Utilizing two of the same physical locations utilized by Pearson;
>
> (c)    Utilizing the assets of Pearson; and
>
> (d)    Continuing the same general business operations as Pearson.

120.    Pearson ceased its ordinary business operations and filed for bankruptcy at or about the same time as Marshco and/or Veneklase took over the Pearson business enterprise.

121.    Upon information and belief, Marshco and/or Veneklase assumed those liabilities and obligations of Pearson necessary for the uninterrupted continuation of Pearson's normal business operations.

122.    A *de facto* merger took place between Pearson and Marshco.

123.    Because the transfer from Pearson to Marshco involved a merger, Marshco is liable for Pearson's debts, including but not limited to Pearson's obligations to Century 21.

**WHEREFORE**, Century 21 demands judgment against Defendants: (i) for recovery of all sums due, in at least the amount of $6,605,699.36, plus continually accruing interest; (ii) awarding to Century 21 its attorneys fees and costs of suit; and (iii) granting such other and further relief as is deemed just and proper.

## SECOND COUNT – SUCCESSOR LIABILITY

124.    Century 21 repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of this Complaint.

125.    Defendants Veneklase and Marshco had actual notice of Century 21's claims against Pearson and the Fores.

126.    Alternatively, notice of Century 21's claims against Pearson and the Fores may be imputed to Defendants Veneklase and Marshco, by virtue of Veneklase's insider relationship with the Fores.

127.    Alternatively, because the Fores continued to work for Marshco after their transfer of Pearson's assets to Marshco and/or Veneklase, their knowledge of the Century 21 obligations can be imputed to Marshco and/or Veneklase.

128.    By and through the acts described above, Marshco and Veneklase implied their agreement to pay the debts of Pearson.

129.    By and through the acts described above, Marshco and Veneklase assumed Pearson's liabilities to Century 21.

130.    The transfer from Pearson to Marshco and/or Veneklase was not made in good faith.

131.    The transfer from Pearson to Marshco and/or Veneklase was not made for value.

132.    The transfer from Pearson to Marshco and/or Veneklase was not made at arms' length.

133.    The transfer from Pearson to Marshco and/or Veneklase, which included some or all of the Collateral, was not supported by consideration, and Century 21, Pearson's secured creditor, was not provided for as a part of such transfer.

134.    The transaction between Pearson and/or the Fores on one hand, and Marshco and/or Veneklase on the other, was fraudulent.

135.    As a result of the foregoing, Marshco and Veneklase are liable to Century 21 for all obligations due and owing from Pearson and the Fores to Century 21.

**WHEREFORE**, Century 21 demands judgment against Defendants as the successor to Pearson: (i) for recovery of all sums due, in at least the amount of $6,605,699.36, plus continually accruing interest; (ii) awarding to Century 21 its attorneys fees and costs of suit; and (iii) granting such other and further relief as is deemed just and proper.

## THIRD COUNT - TORTIOUS INTERFERENCE

136.    Century 21 repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of this Complaint.

137.    At the time of the events described above, the Franchise Agreements constituted valid and binding contracts between Century 21, Pearson and the Fores.

138.    Defendants had actual knowledge of the Franchise Agreements and of Century 21's interest in the Franchise Agreements.

139.    Upon information and belief, Veneklase and Marscho had knowledge of such facts and circumstances as would lead a reasonable person to believe that Century 21 had an interest in the Franchise Agreements.

140.    Defendants herein willfully, intentionally and wrongfully interfered with the Franchise Agreements between Century 21, Pearson and the Fores, causing or inducing Pearson and the Fores to breach their obligations to Century 21, to Century 21's detriment.

141.    Specifically, among other acts, Defendants herein assisted and enabled the Fores to transfer real estate listings, personal property, other collateral, and even affiliation of real estate agents, at or about the same time as the Fores ceased the operations of Pearson.

142.    Defendants herein wrongfully interfered with the listing agreements between Century 21 agents and their clients, causing or inducing Pearson and the Fores to breach their obligations to Century 21, proximately causing Century 21 injury.

143.    Defendants' assistance and interference with the valid and binding business agreements by and between Century 21, Pearson and the Fores, was a proximate cause of Century 21's injury.

144.    As a result of Defendants' actions, Century 21 lost benefits due and owing under the Franchise Agreements, including profits on the commissions from sales transacted by Pearson agents.

145.    Under the Franchise Agreements, royalty fees and national advertising fund fees are calculated based on Pearson's Gross Revenues as defined in the Franchise Agreements, which include any sales commissions on transactions listed by Pearson.

146.    Defendants' wrongful interference with the business relationship between Century 21, Pearson and the Fores deprived Century 21 of revenues that would have continued to accrue under the Franchise Agreements.

147.    Defendants herein willfully and intentionally assisted the Fores in breaching their non-competition obligation under the Franchise Agreements between Century 21, Pearson and the Fores, to Century 21's detriment.

148.    Specifically, among other acts, Defendants Veneklase and Marshco assisted and enabled the Fores to become employed in the very same office, in violation of their non-competition obligations, immediately upon cessation and abandonment of Pearson.

149.    This assistance and interference with the valid and binding non-competition covenant by and between Century 21 and the Fores, was a proximate cause of Century 21's injury. Specifically, Century 21 was damaged by the Fores' prohibited competition with Century 21 by losing the opportunity to enter into listing agreements that otherwise would have been available to other Century 21 agents, and that would have benefited Century 21.

150.    Defendants' ongoing acts of tortious interference with the Franchise Agreements between Century 21, Pearson and the Fores have inflicted and continue to inflict irreparable harm on Century 21.

24

**WHEREFORE**, Century 21 demands judgment against Defendants Veneklase and Marshco:

      (a)    Ordering Defendants Veneklase and Marshco to account to Century 21 for any and all profits derived from their tortious interference with the Franchise Agreements; and

      (b)    Granting compensatory damages together with interest, attorneys fees, and costs of suit, and such other and further relief as this Court shall deem just and proper.

## FOURTH COUNT – COMMON LAW CONVERSION

151.  Century 21 repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of this Complaint.

152.  By virtue of its perfected security interest, Century 21's interest in the Collateral is superior to that of Marshco and/or Veneklase.

153.  Marshco and/or Veneklase have wrongfully exercised dominion over some or all of the Collateral without Century 21's consent.

154.  Upon information and belief, Marshco and/or Veneklase have wrongfully exercised dominion over the proceeds of some or all of the Collateral, without Century 21's consent.

**WHEREFORE**, Century 21 demands judgment against Defendants: (i) directing Defendants to turn over the Collateral or the value thereof to Century 21; (ii) awarding Century 21 its attorneys fees and costs of suit; and (iii) granting such other and further relief as is deemed just and proper.

## FIFTH COUNT – STATUTORY CONVERSION

155.    Century 21 repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of this Complaint.

156.    Marshco and/or Veneklase knew or had reason to know that Century 21 has a first-priority secured interest in the Collateral.

157.    Pearson and the Fores converted the Collateral when they transferred or delivered the Collateral to Marshco and/or Veneklase.

158.    Marshco and/or Veneklase knew or had reason to know that Pearson and the Fores converted the Collateral when they transferred or delivered the Collateral to Marshco and/or Veneklase.

**WHEREFORE**, Century 21 demands judgment against Defendants pursuant to M.C.L.A. § 600.2919a(1): (i) directing Defendants to turn over the Collateral or the value thereof to Century 21; (ii) awarding Century 21 its damages; (iii) awarding Century 21 treble damages; (iv) awarding Century 21 its attorneys fees and costs of suit; and (v) granting such other and further relief as is deemed just and proper.


## SIXTH COUNT – UNJUST ENRICHMENT

159.    Century 21 repeats and makes a part hereof each and every allegation contained in the preceding paragraphs of this Complaint.

160.    Marshco obtained a benefit from Century 21 by receiving and using some or all of the Collateral and/or proceeds of some or all of the Collateral.

161.    If Marshco is permitted to retain such benefit, an inequity to Century 21 will result.

26

Century 21 is entitled to the recovery of the benefit obtained by Marshco in taking and/or receiving the Collateral from Pearson.

**WHEREFORE**, Century 21 demands judgment against Defendants: (i) directing Defendants to turn over all benefits gained by the use and possession of the Collateral; (ii) awarding to Century 21 its attorneys fees and costs of suit; and (iii) granting such other and further relief as is deemed just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Century 21 requests that upon final hearing Century 21 recovers judgment against Defendants Veneklase and Marshco as follows:

(a) Finding Defendant Marshco to be the successor to Pearson and to have assumed Pearson's liabilities to Century 21, in at least the amount of $6,605,699.36, plus continually accruing interest;

(b) Directing Defendants to turn over Century 21's collateral or the value thereof to Century 21;

(c) Directing Defendants to turn over all benefits gained by the use and possession of Century 21's collateral, in such amount as may be determined at trial;

(d) Directing Defendants to pay any and all profits derived by Defendants Veneklase and Marshco from their tortious interference with the Franchise Agreements, in such amount as may be determined at trial;

(e) Awarding Century 21 its damages;

(f) Awarding Century 21 treble damages;

(g) Awarding Century 21 pre- and post-judgment interest as provided by law;

(h) Awarding Century 21 its costs of suit;

(i) Awarding Century 21 its attorneys fees; and

(j)     Awarding Century 21 such other and further relief as the Court deems just and proper.


DICKINSON WRIGHT PLLC

By: _____

Jason P. Klingensmith (P61687)
500 Woodward Ave, Suite 4000
Detroit, Michigan 48826-3425
Telephone:  (313) 223-3051
Facsimile:  (313) 223-3598
E:    jpklingensmith@dickinson-wright.com

-and-

Daniel M. Eliades
FORMAN HOLT ELIADES & RAVIN, LLC
218 Route 17 North
Rochelle Park, New Jersey 07662
Telephone:  201-845-1000
Facsimile: 201-845-9112
E:    deliades@formanlaw.com

*Attorneys for Plaintiff Century 21 Real Estate, LLC, F/K/A Century 21 Real Estate Corporation*

Dated:  May 24, 2007

DETROIT 26716-5 991817v1